Napton, judge,
delivered the opinion of the court.
This was a bill in chancery. The facts which may be assumed from the bill, answer and exhibits, were these :
About the 19th Nov., 1841, Cornelius, being on the eve of insolvency, and willing to secure certain persons who were his securities for large amounts, executed two conveyances to these securities for property which they consented to estimate at $10, 500. The first conveyance was made to Payne, Wood, Lamme, J. W. Harris. C. R. Harris, Todd and Murrill, and embraced several tracts of land and town lots. The consideration of this deed was $7,500, and the deed contained the words grant, bargain and sell, and also a clause of general warranty. The second deed transferred some slaves, judgments, &c., for $3,000, secured to he paid by the grantees, who were the same persons in the first deed named. On the same day a third deed was executed by the grantees in the first two deeds to Payne and Lamme, as trustees to sell the property conveyed by the first deeds and appropriate rateably to the extinguishment of certain debts of Cornelius, for which the grantees were already responsible. This deed recited that in consideration of the sale by Cornelius, Payne, one of the grantees, had executed his obligation to pay $1,180 20 on a certain bond in which he was security for Cornelius, and Payne, Woods & Co., had executed their obligation to pay $1,299 on another bond in which they *323 were securities, and so on enumerating all the different obligations which the securities who were grantees had given to extinguish a certain portion of Cornelius’ liabilities. Among these it was recited that Lamme and Payne as trustees had executed their obligation to pay H. Cave $502 60 on a bond in which Joel H. Hayden stood securities In consideration of these obligations, Woods and wife, C. R. Harris and wife, J. W. Harris, Murrill and wife and Todd and wife; conveyed the property to Lamme and Payne in trust to pay off the several sums thus enumerated to be due from Cornelius to his creditors.
The obligation upon which the present suit is based, is the. one executed by Lamme and Payne to pay off a portion of Cornelius’ note to Cave, on which the complainant Hayden, was security. This obligation is as follows :
“ Know all men by these presents, that for and in consideration of the sale and conveyance of certain real and personal estate, by W. Cornelius and wife to us and others, we hereby bind ourselves and heirs, executors, &c., to pay the sum of five hundred and two dollars and sixty cents, on a certain bond given and executed by said W. Cornelius and Joel H. Hayden security to Henry Cave, and now being in suit in the Boone circuit court, and to save said Cornelius from the payment of said amount on said note and all interest arising thereon from this date, 19th Nov., 1841.
DAVID S. LAMME, trustee,
MOSES U. PAYNE, trustee.”
Hayden, the complainant, had been compelled to pay this note to Cave—Cornelius was insolvent and a non-resident—and the object of the bill was to compel Lamme and Payne to pay the said sum of $502-60 and interest according to the tenor of this obligation, which Hayden, as security, considered himself entitled to the benefit of, in equity.
The answer of the defendants placed their defence upon two grounds. They assert that the complainant, although not present at the first meetings of the securities, was yet advised of the arrangements which had been agreed upon before they were consummated, and that he approved of and sanctioned them—that he fully understood that he was to share the fate of the other securities, and if the property conveyed to the trustees, did not bring the full sum of $10,500, then the securities were to lose rateably. They alleged that the deed of trust to Lamme and Payne was made as well for Hayden’s benefit as for the benefit of *324 the other securities therein named, and that they (Lamme and Payne) acted for Hayden in signing the obligation they gave to Cornelius to pay off $502 60 on the Cave note. They declare that they called upon the complainant to give them some written acknowledgment of the transaction, but he refused to do so, and insisted on their responsibility to him for the full amount of $502 60.
The answer and evidence further showed that the property conveyed by Cornelius was encumbered with judgments and mechanics’ liens to the amount of two or three thousand dollars, which encumbrances the trustees were compelled to remove, in consequence of which the trustees did not realize more than three-fourths of the nominal value of the property. The trustees therefore insisted in their answer that Hayden must share the fate of the other securities under the deed of trust, and that they were not bound to pay him the whole amount of the $502 60 at the expense of the other securities, but only his rateable portion thereof.
Another position taken in their answer was, that if Hayden repudiated the trust deed, and denied his obligation to share the fate of the other securities, he then stood only in the place of Cornelius, and as Cornelius warranted the title of the property conveyed in his deed, against incumbrances, and incumbrances existed which they were compelled to remove, Cornelius could not compel the fulfilment of their contract in a court of equity. Cornelius being insolvent and a non-resident, was not entitled, as they insisted, to force the payment of the whole amount of the $502 60, which they had undertaken to pay, without first making good the damages which they had sustained by reason of his breach of warranty. A court of equity would not turn them round to their action at law upon the warranty, when it was obvious from the fact of his insolvency and non-residence, that such action would be unavailing. And the trustees insisted that Hayden,the complainant, if he renounces the benefit or burthens of the trust understood between the securities, can occupy no other or better ground than Cornelius himself.
To sustain their position that Hayden actually consented to the disposition of Cornelius’ property as understood by the other securities, the defendants introduced two witnesses, Woods and Todd, each of whom were grantees in the deeds from Cornelius, and parties to the trust deed made to Lamme and Payne. These witnesses were objected to, and exceptions taken to their testimony.
Woods testified that he was applied to by Hayden to know the partic *325 ulars of the deeds made by Cornelius to his creditors and of the arrangement about the property—that after inquiring of Payne and Harris, two of the parties, he told Haden the contents of the deeds,, whereupon Haden stated that all he wanted was to fare as the other creditors did, who signed the deed. Witness informed Hayden that the property was to be divided pro rata among the securities, at which Hayden expressed himself well satisfied. Witness did not know of Hayden’s being present at any of the meetings, or at the execution of any of the deeds.
Todd stated that he was present at two meetings of the securities, one in the night time at the counting house of Cornelius, and the other next morning—both previous to the execution of the deeds. Hayden was present at the last meeting, and had a good deal of conversation with some of the other securities, but witness did not recollect any thing that was said.
The circuit court decreed that Hayden receive his proportion of the proceeds of the trust property, and the matter was referred to a master to state the account. From this decree Hayden appealed.
The witnesses, Woods and Todd, were called upon for the purpose of bringing the complainant within the terms of the trust deed to Lamine and Payne. It may be inferred from the several deeds which were in evidence, and indeed it is expressly admitted, that the securities of Cornelius, who were parties to those deeds, anticipating his insolvency, agreed to purchase his property at a price fixed upon by Cornelius. The price agreed upon was $10,500, and the effect of the agreement was to extinguish that amount of Cornelius’ debts. Whether the price of the property was beyond its actual value or not, was not material to them, as they were previously respnsible for the debts the property was intended to liquidate. It was also clearly understood, and the terms of the deeds alone show this, that these securities, in the event the property did not bring the full amount of $10,500, were to sustain the loss proportionately. It seems also that the complainant, who was also1 a security, was to be provided for, and the deed of trust which specifies the different sums, for which cash security had become bound, also recites the obligation given by the trustees, Lamme and Payne, to pay off a certain proportion of the note upon which Hayden was security. This obligation was executed, and Hayden’s name does not appear in any of the transactions further than this. He was not a party to any of the instruments. The object of the complainant in this case was to avail himself of this obligation given to Cornelius, which he could only *326 do in a court of equity. The testimony of Woods and Todd was designed to show that Hayden occupied the same position in the transactions which the other securities did; that he was apprised of the character of the deeds and assented to them, and was willing to fare as the other securities. The result of this must bo that the obligation of Lam-me and Payne extended no farther than to give the complainant his proportion of the proceeds of the trust property. The bill, however, claims the full amount undertaken to be paid by the trustees, not subject to the losses sustained. The witnesses, who were two of the securities, and parties to the deeds, were then interested in subjecting Hayden to the same rule they admitted to be applicable to themselves, for if a decree was made according to the prayer of the bill, it would diminish to that extent the dividend of the other securities, of whom the witnesses were two. The defendants could surely not be liable in their individual capacity. The amount decreed must come out of the trust fund. The bill no where pretends to any such individual responsibility on the part of Lamme and Payne ; and if it did, the whole character of the transaction would sufficiently refute such a pretension. The transaction was all one', the three instruments were all made on the same day, and to complete a single object. They must be construed together.
The testimony of these witnesses was not very important, nor did it tend much to establish the position which it was designed to prove. We would infer from .the evidence of Woods that Hayden was not present until after tire- execution of the deeds, and yet Todd states that he was present at a meeting of the securities on the subject of Cornelius’ insolvency, which meeting, it is presumed, took place before the arrangement was reduced to writing.
In one view óf this case, we think it immaterial whether Hayden assented to the deed of trust or not. It may be important for his interest that he should place himself in this position, and the decree of the circuit court has given him the benefit of it; but we cannot see any ground upon which he can come into a court of equity, repudiating the trusts, express and implied, of that deed. The defendants have given him no obligation upon which he can sue at law. He stands upon the naked paper obligation signed by the trustees and given to Cornelius. He must then avail himself of the relation he sustained towards Cornelius as a security, and in doing this he can share no better fate than his principal. It is most manifest that Cornelius could have no standing in a court of equity, if he were compelled to resort to that forum to en *327 force the obligation of Lamme and Payne. He is insolvent and a nonresident. He has sold property at the price of $10,500 and warranted the title and covenanted against incumbrances. His covenants were broken, and incumbrances to the amount of two thousand dollars and upwards had to be paid. A court of equity would not, under these circumstances, turn the trustees round to a suit upon his covenants, which would be obviously unavailing, and permit him to recover the full amount of their obligation. The complainant then, if he seeks the benefit of this obligation to Cornelius, must make good the counter claims of the trustees.
If we lay aside the testimony of the witnesses in this case, which, as we have before remarked, is not very satisfactory, the most plausible interpretation which we can give to the written instruments executed by the parties is, that Hayden was to occupy the same position with the other securities. The only circumstance which militates against this construction, is the fact, so far unaccounted for on the record, that his name is not signed to any of the deeds. This may have happened in consequence of his absence, or it may have happened because, though present, he was unwilling to have any part in the arrangement. If the former hypothesis be the true one, and it is the one asserted in the answer, the decree of the circuit court was certainly right •, and if the latter be selected as the more probable one, then Hayden, the complainant, stands merely in the shoes of Cornelius, and has no claims in a court of equity to the entire sum prayed for intj^aJtil&Sfe
It is a strong circumstance in favor of Jhi-fc_gOh e bill does not state any reason which operated on ^jAáims and in disced him to give the complainant a preference, not on%- oye* Ij^^creditors, but over the other securities. A court of&¡¡jyiy would noli presume such a preference. Equality is equity. &.nd j^^^h^B^ffiJIes could only be compelled to pay out of the trust íRmNuie whoj^sfo02 60 due upon the note to Cave, upon the suppositions^raí=,S¿riielius intended to secure the complainant a preference over all his other securities. Looking at the nature of the transaction, no motive could be assigned for such conduct, and none is suggested in the bill. So far as the character of the debt is concerned, the debt to Cave is not different from the others, nor is Hayden’s position as security different from that of the other securities. If any motives of private friendship or other motive, not apparent, existed for this partiality on the part of Cornelius, such motive,, it would seem natural, would have prompted Cornelius to have *328 the preference indicated more plainly and conclusively than it was done in the papers drawn up between the parties.
We cannot see any injustice in the decree of the circuit court. The complainant is placed upon a foot with the other securities, all of them being preferred creditors of Cornelius. As he was no party to the arrangement by which this advantage was secured to him, he cannot come inte a court of equity and claim the benefits of this contract, without sharing also the burthens and losses. Cornelius had undoubtedly a right, a strict legal power, to have placed him on safer ground than the others ; but to effect this purpose his intentions should have been indicated by acts which admitted of only one construction. If he has left the complainant remediless at law, and under the necessity of calling on the assistance of a court of equity, he has left him in a position in which such a court will require the complainant to do equity, before it will.interfere in his behalf. The court will indulge no presumptions in favor ©f inequality among creditors standing apparently on the same platform. The defendants have admitted the light of the complainant to his share pro rata of the proceeds of the trust property. For this share, the complainant has his decree, and we shall affirm it.
The other judges concurring, the decree is affirmed.